Case 3:23-cv-00144   Document 26   Filed on 08/29/25 in TXSD   Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
August 29, 2025
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## Galveston Division

No. 3:23-cv-144

Peter Quansah, *Plaintiff*,

v.

MSC Mediterranean Shipping Company, SA, *Defendant*.

### MEMORANDUM OPINION AND ORDER

Jeffrey Vincent Brown, *United States District Judge*:

Before the court is the defendant's motion for summary judgment. Dkt. 21. The court will grant the motion.

## I. Background

The M/V MSC *Adonis* arrived at the port of Houston in the morning of September 15, 2022. *Id.* at 6. The vessel's crew conducted a stevedore-safety inspection, confirming (1) all cargo areas and access routes for stevedores were free of tripping hazards and obstructions and (2) lashing materials were stowed away. *Id.*; Dkt. 21-2. On a container ship like the *Adonis*, lashing rods—long, sturdy, and made of metal—are used to secure shipping containers to the ship deck or to each other. At that point, the vessel was

1/8

turned over to the stevedore, Ceres Terminals, Inc. Dkt. 21 at 1, 6.

Two days later, longshoreman Peter Quansah boarded the *Adonis* under the direction of his employer, Ceres Terminals, Inc. *Id.* at 10; Dkt. 1 ¶ 5. While working, Quansah tripped on a loose lashing rod, fell onto a rope railing that was too slack, and landed ten feet below. Dkts. 1 ¶ 5; 21 at 8. No vessel crew members were present. Dkt. 21 at 8. Two longshoremen came to his aid. Dkt. 24 at 3. Quansah left the ship, drove home, and went to the hospital, where he learned he had broken his wrist. *Id.*

Nearly a month later, Quansah reported the incident to his union without informing his employer or the vessel. *Id.* at 2, 8; Dkt. 21-5. Then Quansah sued the shipowner, MSC Mediterranean Shipping Company, S.A., for negligence. Dkts. 1 ¶¶ 9–11; 21 at 2. The defendant has moved for summary judgment. Dkt. 21.

## II.   Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). For each cause of action moved on, the movant must set forth those elements for which it contends no genuine dispute of material

fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to offer specific facts showing a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

The court "may not make credibility determinations or weigh the evidence" in ruling on a summary-judgment motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But when "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). The court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *United States v. Hous. Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

### III. Analysis

The Longshoreman and Harbor Workers' Compensation Act provides the exclusive remedies for injured covered employees in an action against a vessel. 33 U.S.C. § 905(b). Everyone agrees Quansah worked aboard the

*Adonis* in the course and scope of his employment as a longshoreman for Ceres Terminals at the time of the alleged accident. Accordingly, Quansah's claims against the defendant shipowner are governed exclusively by § 905(b).

As a general matter, "[t]he shipowner has no general duty to discover dangerous conditions 'that develop within the confines of the cargo operations that are assigned to the stevedore.'" *Futo v. Lykes Bros. S.S. Co., Inc.*, 742 F.2d 209, 213 (5th Cir. 1984) (quoting *Scindia Steam Nav. Co., Ltd. v. De Los Santos*, 451 U.S. 156, 172 (1981)). Vessel liability may, however, arise in three scenarios under § 905(b): (1) "if the vessel owner fails to warn on turning over the ship of hidden defects of which he should have known," *i.e.*, the turnover duty; (2) "for injury caused by hazards under the control of the ship," *i.e.*, the active-control duty; and (3) "if the vessel owner fails to intervene in the stevedore's operations when he has actual knowledge both of the hazard and that the stevedore, in the exercise of obviously improvident judgment, means to work on in the face of it and therefore cannot be relied on to remedy it," *i.e.*, the duty to intervene. *Greenwood v. Societe Francaise De*, 111 F. 3d 1239, 1245 (5th Cir. 1997) (quotations and citation omitted); *see also Scindia*, 451 U.S. at 166–67, 170, 174–75.

Although Quansah does not specify which shipowner duties are

allegedly implicated, the defendant contends Quansah has failed to raise a fact issue on whether the vessel breached any of them. Dkt. 21 at 4. The court will take each duty in turn.

To implicate the turnover duty, Quansah must show (1) that a defect in the *Adonis* or in its equipment caused his injury and (2) "the vessel owner had actual knowledge of the defect." *Greenwood*, 111 F.3d at 1246. The shipowner's duty attaches only to latent defects that are unknown to the stevedore and would not be anticipated by them—not open and obvious dangers or those a reasonably competent stevedore should expect to encounter. *Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 97 (1994); *Kitchens v. Tankers*, 2016 WL 5171411, at \*4–5 (S.D. Tex. Jan. 13, 2016). Temporally, this duty covers the vessel's obligations only "before or at the commencement of the stevedore's activities" because "it is the stevedore, not the [vessel], who assumes the responsibility for the safety of its employees" once the stevedore's operations have begun. *Hamilton v. Targa Transp. LLC*, 2018 WL 2010294, at \*3 (S.D. Tex. Apr. 20, 2018); *Futo*, 742 F.2d at 215–16.

Quansah has not raised a fact issue as to whether the defendant breached the turnover duty. There is no evidence the vessel had actual knowledge of the loose rod and railing causing Quansah's accident, nor that

the stevedores reported the defect to the vessel's crew. Dkt. 21 at 14. Quansah offers nothing more than mere speculation to suggest the hazardous condition existed before the stevedores began performing work. Dkt. 24 at 8. To the contrary, the record shows the vessel completed a thorough safety check upon arrival at the port. Dkts. 21 at 6; 21-2. The checklist confirmed the stevedore's work area was free of tripping hazards and all lashing materials were properly stowed away. Dkts. 21 at 6; 21-2.

Moreover, Quansah's accident was two-and-a-half days after the vessel completed the inspection and turned the ship over to the stevedore. Dkt. 21 at 6, 10. Once the baton passed, the *Adonis* had no duty to generally supervise, inspect, or discover dangerous conditions where the longshoremen worked. *Scindia*, 451 U.S. at 172. Indeed, the vessel's crew had no role in cargo operations. Dkt. 21 at 6–7. It became the stevedore's responsibility to keep the walkway clear of loose rods. *Derr v. Kawasaki Kisen K.K.*, 835 F.2d 490, 493 (3d Cir. 1987) (observing vessel may not be held liable for injuries arising from stevedore's own failure to perform its duties). And a loose lashing rod is an open and obvious condition that a reasonably competent stevedore should anticipate encountering. Quansah has been a longshoreman for 15 years—the loose rod on the *Adonis* was not his maiden voyage. Dkt. 21 at 7.

Next, the active-control duty. To implicate this duty, Quansah must show his accident occurred in an area or from equipment "under the active control of the vessel during the stevedoring operation." *Scindia*, 451 U.S. at 167. He cannot. The *Adonis* relinquished control of the vessel to the stevedore two days before Quansah's accident, shifting the duty to remedy hazards in the area to the stevedore. Dkt. 21 at 16; *Pimental v. LTD Canadian Pac. Bulk*, 965 F.2d 13, 16 (5th Cir. 1992). There is no evidence the vessel continued to exert active control over the areas of the *Adonis* where stevedores worked. Dkt. 21 at 16. This is so despite Quansah's argument that the *Adonis*' policy requires vessel crew to "monitor stevedores, . . . ensure compliance with each company policy during loading and unloading, and to directly intervene in cases of non-compliance." Dkt. 24 at 9–10. As a matter of law, even if vessel crew were present and supervised the stevedores, "such observation [cannot] be vaulted into the type of active involvement and control that would trigger the ship's liability." *Derr*, 835 F.2d at 494.

Finally, the duty to intervene. To trigger this duty, Quansah must show (1) the vessel knew about the loose rods and railing, (2) the stevedores continued to work amongst the conditions in "obviously improvident" judgment, and (3) the vessel failed to intervene. *Greenwood*, 111 F.3d at 1245 (citation omitted). This duty is narrow and requires more than the vessel's

mere knowledge of a dangerous condition. *Singleton v. Guangzhou Ocean Shipping Co.*, 79 F.3d 26, 28 (5th Cir. 1996). Because there is no evidence the *Adonis* had actual knowledge of the loose rod and railing nor that the stevedores could not be relied on to remedy this commonplace hazard, Quansah fails to raise a fact issue on the duty to intervene. Dkt. 21 at 17.

\* \* \*

Because Quansah has failed to raise a fact issue as to whether the defendant (1) had a duty and (2) breached it under § 905(b)—his exclusive remedy as a longshoreman—his negligence claim fails as a matter of law. Accordingly, the court grants the defendant's motion for summary judgment. Dkt. 21. A final judgment will issue separately.

Signed on Galveston Island this 29th day of August, 2025.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE